MORGAN and others *vs.* SKIDMORE, executor &c.

An action of *tort* can be maintained against a person, or his personal represent-
ative, for deceit in making false representations as to the solvency of a mer-
cantile firm of which he was a member, although a judgment has been
recovered against the firm (and of course against him jointly with the others)
for the price of the goods sold on credit to the firm, by the plaintiffs, in con-
sequence of such misrepresentations. SUTHERLAND, J., dissented.

The rule that the creditors of a partnership will not be permitted to reach the
individual estate of a deceased partner until all the separate creditors are
satisfied, applies only to cases founded on the relation of debtor and creditor,
and cannot interfere with the remedy against any individual, or his estate,
as a wrongdoer.

APPEAL from a judgment entered upon the report of a
referee.

The complaint alleges that the plaintiffs are bankers in
London, using the firm name of J. S. Morgan & Co.,
and also have transactions through their agents at the city
of New York. That Franklin F. Randolph, during his
lifetime, was one of the surviving members of the firm of
E. R. Goodridge & Co. of New York, and had charge
of its affairs, such last mentioned firm having originally
consisted of Ezra R. Goodridge, Franklin F. Randolph
and Francis Goodridge. That said Randolph, on or about
the 11th day of September, 1867, applied to the plaintiffs'
agents at New York for bills of exchange for twelve
thousand pounds sterling, to be drawn by the plaintiffs
through said agents on the plaintiffs in London, and to be
issued to said firm of E. R. Goodridge & Co., or its survi-
vors, and the same to be paid for within ten days; that
said Randolph, with intent to induce the plaintiffs so to
issue such bills on such credit, and to obtain the same,
falsely and fraudulently represented and stated to them
that said firm of E. R. Goodridge & Co. was perfectly
solvent and responsible, and all its affairs were in good
condition; that Ezra R. Goodridge, a member thereof,
then lately deceased, had left for his family an estate of at
least $200,000 above all his liabilities, and that his, said

Randolph's, private fortune, which was liable for the debts of the firm, was amply sufficient to cover all claims which would come against it on account of the firm or himself; and that he was about consummating negotiations which would enable him to place about $250,000 of cash in the business for the purpose of facilitating its liquidation. That the plaintiffs, believing and relying on said representations and statements, and having no notice of the falsity thereof, thereupon, on 11th of September, 1867, issued said exchange and delivered it to said Randolph for twelve thousand pounds sterling, payable in London, seventy-five days after September 9, 1867, for the price or sum of $85,232.09, to be paid by said firm, or its survivors, ten days after such issue, namely, September 21, 1867. That said Randolph received said exchange and indorsed and negotiated it, and the same on presentment at London was paid by the plaintiffs to lawful holders, who were entitled to the payment thereof. That in truth and in fact, at the time of the making of said representations, the firm of E. R. Goodridge & Co. was not solvent or responsible, and its affairs were not in good condition; and said Ezra R. Goodridge had not left for his family an estate of at least $200,000 above liabilities; and said Randolph's private fortune was not sufficient to cover all claims which would come against it, on account of the firm or himself; and he was not about consummating said supposed negotiations. On the contrary, the firm of E. R. Goodridge & Co. then was insolvent and irresponsible, its affairs were in a bad and desperate condition, and said Ezra R. Goodridge had died insolvent, and left no estate for his family; said Randolph was wholly insolvent and irresponsible, and no negotiations existed for any sum of cash to assist in the liquidation of the firm; all which matters said Randolph then well knew, but the same were wholly unknown to the plaintiffs. That said Franklin F. Randolph departed this life on or about the 18th day of

September, 1867, leaving his last will and testament, which has been admitted to probate, proved and recorded before the surrogate of the city and county of New York, and letters testamentary have been issued to the defendant, William L. Skidmore, as sole executor thereof, and he has the execution thereof. That Francis Goodridge, from the death of said Randolph, has been the sole surviving member of said firm of E. R. Goodridge & Co. That the price of said exchange above mentioned has not been paid in whole or in part, and the plaintiffs have exhausted their remedy by judgment and execution against said survivor without collecting the same, or any part thereof, and by means of the premises they had suffered loss and damage to the amount of said $85,232.09 and interest; for which sum, with interest and costs, they demanded judgment against the defendant as such executor.

The answer was a general denial.

The action was referred to a referee, who found the following facts, viz: That at the several times hereinafter mentioned, the plaintiffs were bankers in London, England, and had transactions through their agents in the city of New York. In and during September, 1867, said Franklin F. Randolph was one of the surviving members of the firm of E. R. Goodridge & Co. of New York, and had charge of that firm's affairs. Said firm was composed of Ezra R. Goodridge, (then lately deceased,) said Randolph and Francis Goodridge. About September 11, 1867, said Randolph applied to the plaintiffs, through their agents at New York, for bills of exchange to be drawn by such agents on the plaintiffs at London, for twelve thousand pounds sterling, and to be issued to said firm on a credit of ten days. In order to induce said agents to issue said bills on said credit, said Randolph falsely and fraudulently represented to said agents that the affairs of said firm were in good condition; that said firm was perfectly solvent; that said Ezra R. Goodridge had left at least

$200,000 clear for his family, and that said Randolph's own private fortune was amply sufficient to cover all the claims against it, on account of the firm's liabilities or his own. The plaintiffs by said agents believed and relied upon said representations, and on the faith thereof the plaintiffs, on the 11th September, 1867, drew said bills of exchange on the plaintiffs, the same being three bills, each for four thousand pounds sterling, on London, dated September 9, 1867, and payable seventy-five days after date; and the plaintiffs by said agents issued and delived said bills to said Randolph on said 11th September, 1867, at a credit of ten days upon the price agreed upon, which price amounted on the 21st September, 1867, when it became payable, to $85,220.74 of lawful money of the United States. That said several representations were false. The affairs of said firm were not in good condition; said firm was not solvent. Said Ezra R. Goodridge had not left his family $200,000, nor any like sum; and said Randolph's private fortune was not sufficient to cover the claims against it, on account of the firm's liabilities or his own; and on the contrary, the said firm and each of its partners, and the estate of said Ezra R. Goodridge, then was insolvent, all which said Randolph then well knew. Said bills of exchange were negotiated by Randolph, and the plaintiffs paid them to the holders thereof. No part of said price was ever paid to the plaintiffs, and they had sustained damages by means of said false representations to the sum of $85,220.41, with interest on that sum from September 21, 1867, to the date of the report, being $6959.63, making together $92,179.63. That said Randolph died September 18, 1867, leaving a last will and testament, and the defendant is sole executor thereof. It was proved that a judgment had been recovered by the plaintiffs for the amount of their claim, against the firm of E. R. Goodridge & Co., and that an execution issued upon it had been returned unsatisfied.

Morgan *v.* Skidmore.

The referee also found the following conclusions of law, viz: That said Randolph, by reason of said false representations, was liable to the plaintiffs for damages in an action for fraud and deceit. That the defendant, as executor of said Randolph, was liable for the same, in like manner. That the plaintiffs were entitled to recover said damages in this action, with costs. He therefore reported that the plaintiffs were entitled to judgment against the defendant as executor of the said Franklin F. Randolph, deceased, for the sum of $92,179.63, with the costs of the action.

The defendant appealed from the judgment so entered.

*Wm. E. Curtis,* for the appellant.

*Charles Tracy,* for the respondent.

CLERKE, P. J.   The question, relative to the giving of costs to the plaintiffs, against the executor, was considered on the appeal from the order denying a new trial. So that the only question left on this appeal is, whether an action of *tort* can be maintained against a person, or his representative, for deceit, in making false representations as to the solvency of a mercantile firm of which he was a member, when a judgment has already been recovered against the firm (and of course against him jointly with the others) for the price of the goods sold on credit to the firm by the plaintiffs in consequence of those misrepresentations?

It is contended by the counsel of the defendants, that to allow the maintenance of this action, under such circumstances, is to ignore the rule that while the partnership estate is primarily liable to the partnership creditors, the individual estate is primarily liable to the individual creditors. This would be a valid objection if, in this action, the plaintiffs sued as creditors of the deceased; for such a claim would be inconsistent with the claim on which their former action was founded. In that, they alleged, in substance, that he was jointly and not severally

Morgan v. Skidmore.

liable with the others. Such an allegation would be manifestly at variance with any claim against him, severally, as an individual, for the same debt. But the present action is in no respect, except in amount, identical with the former. The defendant is sought to be made liable for the conduct of the deceased, as a wrongdoer, and not as a debtor. If the deceased had made the alleged false representations in relation to the solvency of another firm—one with which he was in no way connected—he would, of course, be liable; and the value of the goods sold would be the measure of the damages. The remedy, in such a case, would be more efficacious than an ordinary action to recover the amount of the debt; for the plaintiff would be entitled to an order of arrest, and to an execution against the person of the defendant, in case no property could be found, to satisfy the first execution. The fact that the false representations were made in relation to the solvency of a firm of which the defendant was himself a member, cannot change the nature of the offense, or the rights of the injured party. He is equally a wrongdoer; and they equally suffer from the wrong, and are therefore entitled to any advantage which the law allows against a wrongdoer, over and above what the law allows against an ordinary debtor. The rule that the creditors of a partnership will not be permitted to reach the individual estate of a deceased partner until all the separate creditors are satisfied, applies only to cases founded on the relation of debtor and creditor, and cannot interfere with the remedy against any individual, or his estate, as a wrongdoer. The judgment should be affirmed, with costs.

CARDOZO, J., concurred.

SUTHERLAND, J., dissented.

Judgment affirmed.

[NEW YORK GENERAL TERM, November 1, 1869. *Clerke, Sutherland* and *Cardozo*, Justices.]